IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action 14-cv-03359-CMA-MJW

MARCUS LESSARD,

Plaintiff,

v.

TRACI CRAVITZ, et al.,

Defendants.

**REPORT & RECOMMENDATION ON PLAINTIFF'S MOTION TO REQUEST INJUNCTIVE RELIEF (Docket No. 151) & PLAINTIFF'S MOTION TO REQUEST INJUNCTION FOR TEMPORARY STAY (Docket No. 153)**

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

Plaintiff has filed two motions, which District Judge Christine M. Arguello has referred to the undersigned:

- Plaintiff's Motion to Request Injunctive Relief (Docket No. 151); and
- Plaintiff's Motion to Request Injunction for Temporary Stay (Docket No. 153).

The motions are related to each other. In the first motion, Plaintiff argues that his pending state-court trial fits within the exceptions to *Younger v. Harris*, 401 U.S. 37 (1971), and he asks this Court to enjoin the state-court criminal proceedings. Plaintiff's state-court trial is set for September 28, 2015.

In the second motion, Plaintiff argues that the *first* motion is unlikely to be resolved before his state-court trial, and he asks this Court to temporarily enjoin the state-court criminal proceedings for however long it takes to resolve the first motion.

2

The Court has reviewed the parties' filings (Docket Nos. 151, 153, & 157), taken judicial notice of the Court's entire file, and considered the applicable Federal Rules of Civil Procedure, statutes, and case law. The Court notes that Plaintiff has not yet filed a reply, but Plaintiff has an interest an expedited ruling because his underlying criminal trial is set for September 28, 2015—less than three weeks from the date of this Report and Recommendation. Further, this Court may rule on a motion any time after it is filed. D.C.COLO.LCivR 7.1(d) ("Nothing in this rule precludes a judicial officer from ruling on a motion at any time after it is filed."). The Court hereby recommends that both motions be denied.

## **Plaintiff's Motion to Request Injunctive Relief (Docket No. 151)**

Plaintiff was prosecuted in 2010 for felony stalking, based largely upon a series of rambling and explicit emails sent to a former high-school classmate named Liz LaFemina. In parallel civil proceedings, a permanent protection order (PPO) was entered against Plaintiff in LaFemina's favor. In the criminal proceedings, Plaintiff pleaded guilty as part of a deferred judgment and sentence (DJ&S) agreement. Pursuant to Colorado's DJ&S statute, the guilty plea was withdrawn and the charges were dismissed after Plaintiff successfully completed the conditions of the agreement in 2012. In 2012 and 2013, Plaintiff filed at least one motion to vacate his criminal case, but all such motions were denied as moot.

In 2013, Plaintiff filed a motion in the PPO case to vacate the judgment for fraud upon the court. He served a copy of that motion upon LaFemina. After the motion was denied, he filed a different motion and again served it upon LaFemina. The District

Attorney deemed service of these motions to be unlawful contact in violation of the PPO, and is now prosecuting Plaintiff for those alleged violations. Plaintiff asks this Court to enjoin the state-court criminal proceedings on the grounds that they violate his First, Fourth, and Fourteenth Amendment rights.

**I.     Legal Standards**

Under *Younger v. Harris,* 401 U.S. 37 (1971), "[a] federal court must abstain from exercising jurisdiction when: (1) there is an ongoing state criminal . . . proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution . . . ." *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999). These elements are easily met here, a point that Plaintiff concedes. Plaintiff argues, however, that the *Younger* abstention doctrine is subject to exceptions that apply here. *Younger* established three exceptions: (1) "bad faith or harassment," (2) prosecution under a statute that is "flagrantly and patently" unconstitutional, or (3) other "extraordinary circumstances" involving irreparable injury. 401 U.S. at 46–55.

To establish the "bad faith or harassment" exception, Plaintiff must establish one of several possible tests:

> Three factors that courts have considered in determining whether a prosecution is commenced in bad faith or to harass are: (1) whether it was frivolous or undertaken with no reasonably objective hope of success; (2) whether it was motivated by the defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights; and (3) whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions.

*Phelps v. Hamilton*, 59 F.3d 1058, 1065 (10th Cir. 1995) (internal citations omitted).

To qualify under the second *Younger* exception, Plaintiff must show that the underlying statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Younger*, 401 U.S. at 53–54. To satisfy this test, the invalidity of the statute must be "patent and obvious." *Phelps,* 59 F.3d at 1064.

To qualify for the third exception, Plaintiff must show exceptional circumstances constituting irreparable injury—and the fact the accused may have to stand trial is not an 'irreparable injury. *Younger*, 401 U.S. at 49. Rather, a threat to an individual's federally protected rights constitutes irreparable injury only where the threat "cannot be eliminated by . . . defense against a single criminal prosecution." *Younger,* 401 U.S. at 46.

## II.     Evidence Presented

In support of his motion, Plaintiff presented nearly four hundred pages of documents. The exhibits introduced here are as follows:

- From Plaintiff's current criminal prosecution, the criminal complaint filed on June 18, 2014, in the County Court for Boulder County, Colorado. It charges Plaintiff with one count of felony stalking and two misdemeanor counts for violation of a protection order. The conduct at issue is alleged to take place from April 1, 2013, through December 10, 2013—and specifically on April 6, 2013, and December 9, 2013. (Docket No. 151-2, pp.2–3.)

- From Plaintiff's current criminal prosecution, the warrant for arrest upon affidavit, signed by Judge Andrew Macdonald on January 16, 2014. The supporting affidavit references Plaintiff's 2010 prosecution and PPO, then goes on to attest: that on April 26, 2013, LaFemina received a package from Plaintiff, containing his motion to vacate the PPO, but not containing "any personal correspondences or notes to"

LaFemina; that in April 2013, LaFemina had been contacted by a process server on Plaintiff's behalf; and that on December 9, 2013, LaFemina again received a package from Plaintiff containing another court motion. The affidavit reasons that, because Plaintiff's first motion had been denied, Plaintiff had actual notice that his position was groundless before he sent the second motion. The affidavit concludes that Plaintiff "is using the criminal justice system to continue to contact Lafemina and cause her ongoing emotional distress," constituting probable cause for the charged offenses. (Docket No. 151-2, pp.4–7.)

- A narrative police report describing the April 26, 2013 incident. (Docket No. 151-2, p.8.)

- A narrative police report dated September 4, 2013, closing the April 26, 2013 incident on the ground that one incident did not establish probable cause for a violation. (Docket No. 151-2, p.9.)

- A narrative police report describing the December 9, 2013 incident. (Docket No. 151-2, p.10.)

- Related police paperwork. (Docket No. 151-2, pp.11–13.)

- The Boulder County District Court's April 2, 2013 order denying a March 2013 motion by Plaintiff to vacate the permanent restraining order. (Docket No. 151-2, p.14.)

- A July 18, 2014 order of the Colorado Supreme Court denying Plaintiff's motion for a stay of his current criminal proceedings, and a July 7, 2015 order of the Colorado Supreme Court denying Plaintiff's Petition for Writ of Prohibition. (Docket No. 151-3, pp.3–4.)

- Plaintiff's July 2014 Petition for Writ of Prohibition, filed in the Colorado Supreme Court, asking that court to compel the District Attorney to drop the current criminal charges against Plaintiff (or, similarly, compel the trial court to decline to exercise jurisdiction over the prosecution). Plaintiff argued in this petition that (1) he was allowed by law to file the motions he filed, and (2) the affidavit supporting the charges against him was based on nothing more than what Plaintiff characterizes as LaFemina's unreasonable reaction to the motions—and setting aside her unreasonableness, there is no probable cause to support his prosecution. Plaintiff further asserted a number of legal flaws in the case against him. (Docket No. 151-3, pp.5–42.) Attached as exhibits to this petition are:

    o The 2014 affidavit and arrest warrant. (Docket No. 151-3, pp.44–49.)

- o The May 8, 2013 trial-court order denying Plaintiff's first motion to vacate the PPO, and the December 5, 2013 trial court notice returning his second motion to him due to filing errors. (Docket No. 151-3, pp.50–53.)

- o The criminal complaint and police reports described *supra*, as well as a printout of Plaintiff's dialogue with an anonymous person, allegedly an attorney, on www.justanswer.com. (Docket No. 151-3, pp.54–66.)

- o An April 8, 2014, letter to the prosecuting Deputy District Attorney, Tim Johnson, in which Plaintiff explains to Johnson why (in Plaintiff's view) the law allowed him to file the motions he filed. (Docket No. 151-3, pp.67–75.)

- o A transcript of the July 16, 2014, preliminary hearing in Plaintiff's current criminal proceeding, at which LaFemina testified. (Docket No. 151-3, pp.76–109.)

- o Plaintiff's November 30, 2013 motion to vacate the PPO (the motion received by LaFemina on December 9, 2014). The motion includes the following summary:

    > This complaint is against two officers of the court who committed such acts as to render the judgment received "void" pursuant to C.C.R.C.P. 360(b). The first complaint is against the judge for fraud upon the court in the form of bias. The second complaint is against the Defendant's own attorney who willfully denied the Defendant his "day in court." Also he deceived the Defendant in such a way as to prevent him from appealing; this too would be fraud upon the court.

    The motion goes on to detail extensive evidentiary flaws and procedural flaws that Plaintiff perceives in the 2010 PPO hearing. The motion includes, among other exhibits, a transcript of the hearing. (Docket No. 151-3, pp.110–42.)

- From Plaintiff's current criminal prosecution, his attorney's motions for discovery of impeachment materials and to preserve evidence. (Docket No. 151-4, pp.2–7.)

- From Plaintiff's current criminal prosecution, the prosecution's motion to introduce prior-acts evidence under Colorado Rule of Evidence 404(b), asking the state court to allow into evidence the emails underlying Plaintiff's 2010 prosecution. (Docket No. 151-4, pp.8–16.) Also included is Plaintiff's counsel's objection. (Docket No. 151-4, pp.17–21.)

- From Plaintiff's current criminal prosecution, the prosecution's motion for a competency evaluation, and the court-appointed expert's report concluding that Plaintiff is competent to stand trial. (Docket No. 151-4, pp.22–44.)

x

7

- From Plaintiff's 2010 prosecution, the order setting bail at $10,000.  (Docket No. 151-5, pp.2–3.)

- From Plaintiff's 2010 prosecution, a transcript of Judge Lael Montgomery's refusal to accept a plea of no contest under the DJ&S statute, where Plaintiff did not deny sending the emails in question.  (Docket No. 151-5, pp.4–7.)

- The May 8, 2013 trial-court order denying Plaintiff's first motion to vacate the PPO. (Docket No. 151-5, pp.8–9.)

- From Plaintiff's current criminal prosecution, an order forfeiting Plaintiff's bond and issuing an order to show cause, for failure to appear at a hearing on December 22, 2014.  (Docket No. 151-5, p.10.)

- From Plaintiff's current criminal prosecution, an order granting the prosecution's motion to introduce prior-acts evidence under Colorado Rule of Evidence 404(b). (Docket No. 151-5, pp.11–13.)

- From Plaintiff's current criminal prosecution, copies of emails between Plaintiff and his defense attorney, in which his defense attorney advises against certain legal strategies Plaintiff suggests.  (Docket No. 151-5, pp.14–15.)

- From Plaintiff's current criminal prosecution, paperwork related to his $10,000 bond. (Docket No. 151-5, pp.16–18.)

- From Plaintiff's current criminal prosecution, paperwork related to his arrest in Oklahoma and extradition to Colorado.  (Docket No. 151-7, pp.2–16.)

- Affidavits from Plaintiff's family members describing what they perceived to be judicial bias against Plaintiff at his PPO hearing; the apparent bias against Plaintiff. (Docket No. 151-8, pp.2–3.)

- Police records showing no other criminal history.  (Docket No. 151-8, pp.4–6.)

- Affidavits from Plaintiff's parents, attesting to perceived harassment from the police. (Docket No. 151-8, pp.7–10.)

- Several letters, emails, notes, and proof of mailing, representing several of Plaintiff's efforts to bring his arguments and documents to the attention of the police, the District Attorney, and others.  (Docket No. 151-9, pp.2–9, 18–98.)

- Purportedly, a letter sent to Plaintiff by LaFemina in November 1999.  (Docket No. 151-9, pp.10–17.)

- Screenshots from a website, where Plaintiff has posted online lengthy explanations of "the real reasons for, and meaning of, his 2010 emails." (Docket No. 151-10, pp.2–9; *see also* Docket No. 151-1, p.4.)

Plaintiff also incorporates by reference his 215-page Second Amended Complaint and the exhibits attached thereto. (Docket No. 151-6, p.2.) The exhibits in that document (Docket No. 83) are largely duplicative of those described above.

### III.     Discussion

The Court finds that Plaintiff has failed to establish any of the exceptions to *Younger* abstention. Plaintiff's arguments all boil down to his belief that LaFemina lied to the police and to the state courts during his 2010 criminal and civil proceedings—and that the only thing stopping Defendants from agreeing with him on that point is their complicity in the conspiracy against him. Plaintiff's documentary evidence establishes no such conspiracy, however, nor does it (on its own) establish any lies by LaFemina.

*First Younger Exception*

As noted earlier, the Tenth Circuit has identified three tests for when a prosecution is made in bad faith or for harassment:

> (1) whether it was frivolous or undertaken with no reasonably objective hope of success; (2) whether it was motivated by the defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights; and (3) whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions.

*Phelps*, 59 F.3d at 1065 (internal citations omitted).

The Court finds that Plaintiff's current criminal prosecution is not "frivolous or undertaken with no reasonably objective hope of success." The underlying prosecution is based on the legal theory that Plaintiff was prohibited from contacted LaFemina by

9

any means, including by mail, and he nonetheless mailed her two packages containing extensive discussions of LaFemina's purported lies and of Plaintiff's purported relationship with LaFemina. (Docket No. 151-2, pp.2–7; Docket Nos. 151-3, pp.110–42.) The Court finds that not only is the Boulder District Attorney's theory not frivolous, it is indeed well-founded, and upon facts that Plaintiff does not dispute. It should be noted that Plaintiff's constitutional defenses—based on First Amendment's right of access to the courts and on the Due Process Clause's rule of lenity—are not at all frivolous. But the fact that those potential constitutional defenses exist does not, alone, show that the charges lack any objectively reasonable hope of success.

The Court also finds that Plaintiff's current criminal prosecution is not "motivated by the defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights." Neither the documentary evidence nor Plaintiff's interpretation of it establishes any retaliatory animus on the part of the prosecution. Likewise, neither the documentary evidence nor Plaintiff's interpretation of it establishes any discriminatory animus based on Plaintiff's gender (or any other suspect classification). Rather, the documentary evidence establishes—and the Court explicitly finds—that Plaintiff's prosecution has been initiated because Plaintiff's conduct creates probable cause to believe that he committed the crimes he is charged with.

The Court finds that Plaintiff's current criminal prosecution has not been "conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion." In order to meet this test, Plaintiff would have to show that the prosecutorial conduct has been so oppressive as to constitute harassment. "While the threshold test

10

does not require a specific number of prosecutions, it is clear that the number of prosecutions must reach an oppressive level." *Phelps*, 59 F.3d at 1066.  The burden for this showing is heavy: the Tenth Circuit has held, for example, that an administrative prosecution that had been pressed three times against a defendant did not meet this "heavy burden."  *Weitzel v. Div. of Occupational & Prof'l Licensing of Dep't of Commerce of State of Utah*, 240 F.3d 871, 877 (10th Cir. 2001).  Here, the documentary evidence shows that, although his 2010 emails will be introduced as prior-bad-acts evidence, his current criminal prosecution is based on charged conduct occurring during 2013.  (Docket No. 151-2, pp.2–7; Docket Nos. 151-4, pp.8–21; Docket Nos. 151-5, pp.11–13.)  The Court finds that Plaintiff has not been forced to defend multiple prosecutions for the same offense—as to the conduct at issue in his current criminal prosecution, he is defending a single criminal case.  This does not meet the test for harassment or abuse of prosecutorial discretion.

The Court finds that Plaintiff has not established any of the tests for *Younger*'s first exception.

### Second Younger Exception

To qualify under the second *Younger* exception, Plaintiff must show that the underlying statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it."  *Younger*, 401 U.S. at 53–54.  Plaintiff has made no effort to meet this test, arguing instead that his prosecution—the statute *as applied in this case*—is unconstitutional.

11

As the Tenth Circuit has explained, discussing the foregoing language from *Younger*:

> It is not clear whether this phrase was intended to be construed literally to mean that a statute must be unconstitutional as applied to every conceivable situation, or whether it means only that a statute must be unconstitutional under any possible interpretation as applied to the facts of the instant case. Nevertheless, it is clear that the unconstitutionality of the statute must be patent and obvious.

*Phelps*, 59 F.3d at 1064 (internal citations omitted). The Court finds that there is no colorable argument that the statutes at issue in Plaintiff's prosecution—felony stalking and misdemeanor violation of a protection order—are unconstitutional. It is patent and obvious, rather, that they are in fact constitutional. As the Court noted above, Plaintiff's constitutional defenses are not frivolous—but they are not so strong as to make the statute at issue patently and obviously unconstitutional as applied. If the second *Younger* exception were so broad as to encompass this case, it would encompass virtually all as-applied challenges—and it would thus swallow the rule. The Court finds that the statute at issue, whether on its face or as applied in Plaintiff's current criminal prosecution, is not patently and obviously unconstitutional.

### *Third Younger Exception*

The third example requires a threat to Plaintiff's federally protected rights constitutes irreparable injury only where the threat "cannot be eliminated by . . . defense against a single criminal prosecution." *Younger,* 401 U.S. at 46. Although Plaintiff alleges a broad conspiracy to deprive him of a fair trial—running through his 2010 criminal proceeding, his 2010 PPO, and now his current criminal prosecution—the Court finds that Plaintiff has failed to prove any such conspiracy. As a result, Plaintiff presents

12

no injury beyond having to defend a single criminal prosecution—which, under *Younger*, is emphatically *not* extraordinary circumstances.

The Court recommends that Plaintiff's Motion to Request Injunctive Relief (Docket No. 151) be denied.

**Plaintiff's Motion to Request Injunction for Temporary Stay (Docket No. 153)**

As recently set forth by Judge Martinez:

> To prevail on a motion for preliminary injunctive relief, Plaintiffs have the burden of establishing that four equitable factors weigh in their favor: (1) they are substantially likely to succeed on the merits; (2) they will suffer irreparable injury if the injunction is denied; (3) their threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest. Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal.

*Verlo v. City & Cnty. of Denver, Colo.*, ___ F. Supp. 3d ___, 2015 WL 5012919, at *1 (D. Colo. Aug. 25, 2015) (internal citations, quotation marks, and alterations omitted).

As established *supra*, the Court finds that Plaintiff is not substantially likely to succeed on the merits. And in light *Younger*'s strong policy against enjoining state criminal proceedings, the Court finds that the fourth factor weighs heavily against Plaintiff. Balancing all four factors, the Court finds that Plaintiff has failed to show an entitlement to a preliminary injunction.

The Court recommends that Plaintiff's Motion to Request Injunction for Temporary Stay (Docket No. 151) be denied.

13

## **Recommendation**

For the foregoing reasons, it is therefore RECOMMENDED that Plaintiff's Motion to Request Injunctive Relief (Docket No. 151) and Plaintiff's Motion to Request Injunction for Temporary Stay (Docket No. 153) both be DENIED.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colo. Dep't of Corr., 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated:       September 10, 2015            */s/ Michael J. Watanabe*
             Denver, Colorado              Michael J. Watanabe
                                           United States Magistrate Judge