**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 14-cv-03359-CMA-MJW

MARCUS LESSARD,

     Plaintiff,

v.

TRACI CRAVITZ, in her individual and official capacities,
BOULDER POLICE DEPARTMENT,
BOULDER DISTRICT ATTORNEY'S OFFICE,
NATASHA ANDERSON, f/k/a NATASHA YOUNG, in her individual and official
capacities,
KAREN LORENZ, in her individual and official capacities,
KAREN PETERS, in her individual and official capacities,
STEVEN LOUTH,
LIZ LAFEMINA,
KERRY YAMAGUCHI, in his individual and official capacities,
LAEL MONTGOMERY, in her individual and official capacities,
THOMAS J. B. REED, in his individual and official capacities,
G. MULVANEY, in his/her individual and official capacities,
LUCY BATTON, in her individual and official capacities,
GORDON BROWN, in his individual and official capacities,
CASSANDRA HENRIKSON, in her individual and official capacities,
ERICA SOLANO, in her individual and official capacities,
JANE HARMER, in her individual and official capacities,
GORDON COOMBES, in his individual and official capacities,
MAGGIE GREEN, in her individual and official capacities,
MARK HUSMANN, in his individual and official capacities,
MARCI LIEBERMAN, in her individual and official capacities,
DONNA TEAGUE, in her individual and official capacities,
TIM JOHNSON, in his individual and official capacities,
STANLEY L. GARNETT, in his individual and official capacities,
CITY OF BOULDER,
COUNTY OF BOULDER, and
GREG TESTA, in his official capacity,

     Defendants.

**ORDER AFFIRMING AND ADOPTING THE SEPTEMBER 8, 2015
RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE (DOC. # 156)**

On December 11, 2014, this case was referred to United States Magistrate

Judge Michael J. Watanabe to conduct all motion proceedings pursuant to 28 U.S.C. §§

636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72(a) and (b).  (Doc. # 4.)  In a

Report & Recommendation issued on September 8, 2015, Magistrate Judge Watanabe

recommended granting Defendants' motions to dismiss pursuant to Federal Rules of

Civil Procedure 12(b)(1) and 12(b)(6) (Doc. ## 106, 107, 108, 110, and 140).  (Doc. #

156.)  This Court incorporates Magistrate Judge Watanabe's Report &

Recommendation herein by reference.  *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P.

72(b).  On October 7, 2015, Plaintiff Marcus Lessard, proceeding pro se, filed a timely

objection to Magistrate Judge Watanabe's recommendation.  (Doc. # 167.)

## I.    LEGAL STANDARDS

When a magistrate judge issues a recommendation on a dispositive matter,

Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine de

novo any part of the magistrate judge's [recommended] disposition that has been

properly objected to."  In conducting its review, "[t]he district judge may accept, reject, or

modify the recommended disposition; receive further evidence; or return the matter to

the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

The legal standard governing a Rule 12(b)(1) motion to dismiss is as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of
> subject-matter jurisdiction take two forms.  First, a facial
> attack on the complaint's allegations as to subject-matter
> jurisdiction questions the sufficiency of the complaint.  In
> reviewing a facial attack on the complaint, a district court
> must accept the allegations in the complaint as true.

2

> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject-matter jurisdiction depends.  When reviewing a factual attack on subject-matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995) (citations omitted).  It is Plaintiff's burden to demonstrate that the Court has subject-matter jurisdiction over his complaint.  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).

When reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court "accept[s] all the well-pleaded allegations of the complaint as true" and "construe[s] them in the light most favorable to the plaintiff."  *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991).  The Court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *The Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007)).  The plausibility standard is "not akin to a probability requirement," but it asks for more than a "sheer possibility" that the alleged claim might have occurred.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation and quotation marks omitted).  In evaluating the plausibility of a given claim, the Court "need not accept conclusory allegations" without supporting factual averments.  *S. Disposal, Inc., v. Tex. Waste,* 161 F.3d 1259, 1262 (10th Cir. 1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions.  Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

The Court must construe the pleadings of a pro se litigant liberally, as they are

held to a less stringent standard than formal pleadings drafted by lawyers.  *Hall v.*

*Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519,

520-21 (1972)).  Therefore, "[d]ismissal of a pro se complaint for failure to state a claim

is proper only where it is obvious that the plaintiff cannot prevail on the facts he has

alleged and it would be futile to give an opportunity to amend."  *Gee v. Pacheco*, 627

F.3d 1178, 1195 (10th Cir. 2010) (citation omitted).  However, the Court should not be

the pro se litigant's advocate, nor should the Court "supply additional factual allegations

to round out [the pro se litigant's] complaint or construct a legal theory on [his or her]

behalf."  *Whitney v. State of N.M.*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*,

935 F.2d at 1110).

## II.   PLAINTIFF'S CLAIMS

In his 215-page Second Amended Complaint, Plaintiff asserts 19 claims against

27 defendants.  (Doc. # 83.)  The numerous facts underlying Plaintiff's claims are

succinctly summarized in Magistrate Judge Watanabe's Report & Recommendation

(Doc. # 156 at 3-7.) and, therefore, will not be repeated here.

Claims 1, 2, and 3 pertain to Defendant Traci Cravitz and her immediate

supervisor.  (Doc. # 83 at 111-18.)  Defendant Cravitz signed the original affidavit for

Plaintiff's arrest warrant in 2010.  (*Id.*)  These claims allege malicious prosecution,

unlawful arrest, and gender discrimination.  (*Id.*)

Claims 4 and 5 are asserted against Defendants Karen Lorenz and Natasha

Anderson.  (*Id.* at 119-26.)  Defendants Lorenz and Anderson are the deputy district

4

attorneys who drafted and signed both the criminal complaint and the motion for temporary protection order filed against Plaintiff in 2010.  (*Id.*)  Plaintiff alleges that Defendants Lorenz and Anderson engaged in malicious prosecution stemming from a lack of probable cause.  (*Id.*)

Claims 6 and 7 allege conspiracy to commit malicious prosecution without probable cause and/or based on gender discrimination.  (*Id.* at 127-39.)  These conspiracy claims are brought against Defendants Cravitz, Liz LaFemina, five "property/evidence techs" from the Boulder Police Department, and individuals who rejected Plaintiff's requests for investigation from 2011 to 2013.  (*Id.*)

Claim 8 asserts that Defendant Anderson (the lead prosecutor in Plaintiff's 2010 case), Defendant Steven Louth (Plaintiff's defense attorney in the 2010 case), and a police investigator conspired to violate Plaintiff's due process rights by coercing him into a guilty plea.  (*Id.* at 140-45.)

Claim 9 alleges that multiple prosecutors and investigators from the Office of the District Attorney for the Twentieth Judicial District, Defendant Louth, and the judges who presided over Plaintiff's bond setting, personal protection order hearing, and change of plea/sentencing hearing conspired to violate Plaintiff's equal protection rights by coercing him into a guilty plea.  (*Id.* at 146-53.)

Claim 10, asserted against nearly every named defendant in this case, alleges conspiracy to maliciously prosecute Plaintiff in violation of his Fourth Amendment and Fourteenth Amendment rights by both unlawful arrest and the coercing of Plaintiff into a guilty plea.  (*Id.* at 154-57.)

Claim 11 combines Claims 7 and 9 and alleges a conspiracy to unlawfully arrest Plaintiff and coerce him into a guilty plea because of his gender, in violation of his equal protection rights.  (*Id.* at 158-62.)  Similar to Claim 10, Plaintiff names the majority of Defendants in Claim 11.

Claims 12 and 13 are asserted against the prosecutor in Plaintiff's 2014 criminal case and allege that a number of steps in the 2014 proceeding were taken in retaliation for both Plaintiff's request for an investigation into the 2010 proceeding and his filing of the instant lawsuit.  (*Id*. at 163-70.)  Plaintiff contends that his First Amendment rights of speech and access to the courts were violated by the prosecutor.  (*Id.*)

Claim 14 is brought against both the prosecutor in Plaintiff's 2014 criminal case and Defendant Cravitz, who signed the affidavit for the arrest warrant in 2010 and testified at a competency hearing in the 2014 criminal case.  (*Id.* at 171-74.)  Plaintiff asserts the same First Amendment rights as those stated in Claims 12 and 13, but alleges that those rights were violated through a conspiracy to obstruct justice.  (*Id.*)

Claims 15, 16, 17, and 18 allege supervisory liability, liability for failure to prevent, and *Monell* liability on the part of Defendants Stan Garnett, Greg Testa, and various public entities for the constitutional violations asserted in the prior claims.  (*Id*. at 175-94.)

Claim 19 alleges malicious prosecution against Defendant LaFemina.  (*Id.* at 195-201.)

### III.   ANALYSIS OF PLAINTIFF'S OBJECTIONS

As an initial matter, the Court notes that Plaintiff "does not object to the dismissal of Claims 4, 5, 15, and 16." (Doc. # 167 at 1.)  In addition, Plaintiff concedes that all claims must be dismissed against Defendants Boulder Police Department, Boulder

Chief of Police Greg Testa, and Karen Lorenz.  (Doc. # 167 at 1.)  Plaintiff also

concedes that the facts as set forth in Magistrate Judge Watanabe's Report &

Recommendation are accurate.  (Doc. # 167 at 2).  Though Plaintiff states in his

objection that a few of his factual allegations were not explicitly mentioned by Magistrate

Judge Watanabe, the Court notes that the "facts" allegedly ignored are actually

conclusions asserted by Plaintiff.  For example, Plaintiff states that Magistrate Judge

Watanabe "failed to mention Plaintiff's claim that LaFemina lied over a dozen times to

the police."  (Doc. # 167 at 2.)  The Court is not required to accept as a fact Plaintiff's

conclusory allegation that Defendant LaFemina lied to the police.  Thus, the Court

accepts the statement of facts as set forth by Magistrate Judge Watanabe.

### A.    Sovereign Immunity

Magistrate Judge Watanabe recommended the dismissal of several of Plaintiff's

claims pursuant to the Eleventh Amendment and state sovereign immunity.  (Doc. # 156

at 10-12).  Plaintiff's only objection to this aspect of Magistrate Judge Watanabe's

recommendation is that Boulder County should be held liable for alleged acts of

employees of the Office of the District Attorney for the Twentieth Judicial District taken

while acting outside of their official capacities.  (Doc. # 167 at 3.)  Plaintiff's argument

fails for two reasons: (1) the district attorney's office is an instrumentality of the State of

Colorado (not Boulder County) and, therefore, entitled to sovereign immunity, *see Van*

*De Weghe Chambers*, 569 F. App'x 617, 621 (10th Cir. 2014); and (2) Plaintiff does not

allege any plausible facts showing that employees of the district attorney's office acted

outside of their official capacities.  Thus, the Court rejects Plaintiff's objection to this

aspect of Magistrate Judge Watanabe's recommendation.

### B.     Malicious Prosecution

Magistrate Judge Watanabe recommended the dismissal of Plaintiff's malicious

prosecution claims under Rule 12(b)(6).  One element of a malicious prosecution claim

is that the prosecution in question must have terminated favorably for the plaintiff.

*Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008).  Magistrate Judge Watanabe's

recommendation rests on the fact that, in the prosecution in question, Plaintiff entered a

guilty plea under Colorado's deferred judgment statute.  (Doc. # 156 at 23.)  As noted

by Magistrate Judge Watanabe, Plaintiff's guilty plea does not act as a favorable

termination of the prosecution for the Plaintiff.  *Ortega v. City & Cnty. of Denver*, No. 11-

cv-02394-WJM-CBS, 2013 WL 359934, at *7 & n.5 (D. Colo. Jan. 30, 2013); *see also*

*Land v. Hill*, 644 P.2d 43, 45 (Colo. App. 1981).  Thus, Magistrate Judge Watanabe

recommended the dismissal of Plaintiff's malicious prosecution claims based on the

simple fact that Plaintiff cannot establish that the prosecution in question terminated in

his favor.  (Doc. # 156 at 23.)

Plaintiff objects to the recommended dismissal of his malicious prosecution

claims, however, he fails to address the fact that the 2010 prosecution did not terminate

in his favor.  (Doc. # 167 at 3-7.)  Instead, Plaintiff's objection discusses issues of

standing and mootness, which are not at issue here.  (*Id.* at 4-7.)

The Court agrees with Magistrate Judge Watanabe's recommendation with

respect to the dismissal of Plaintiff's malicious prosecution claims.  Because Plaintiff

cannot show that the 2010 prosecution terminated in his favor, he has failed to state a

claim for malicious prosecution and such claims should be dismissed pursuant to Rule

12(b)(6).

### C.    Judicial Immunity

Magistrate Judge Watanabe recommended the dismissal of the individual-capacity claims asserted against Defendants Judge Lael Montgomery and Judge Thomas Reed, who presided over portions of the proceedings involving Plaintiff in 2010.

Judicial immunity protects judges from suit for their judicial acts, as long as those acts are not performed in the "clear absence of jurisdiction." *Bradley v. Fischer*, 80 U.S. 335, 351 (1871).  In courts of superior or general jurisdiction, judges are not liable in civil actions for their judicial acts, "even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Id.* at 351. The motives for such judicial acts do not affect this exemption. *Id.* at 348.  If the judge acts in concert with non-immune co-conspirators, judicial immunity will still apply. *Dennis v. Sparks*, 449 U.S. 24, 28 (1980).

Plaintiff contends that Judges Reed and Montgomery should not be shielded by judicial immunity because each acted outside of their judicial capacity and committed non-judicial acts in furtherance of a conspiracy.  (Doc. # 156 at 10-12.)  In addition, Plaintiff advances a theory of imputed liability, under which Judges Reed and Montgomery can be held liable for the non-judicial acts of other co-conspirators.  (*Id.*) However, Plaintiff provides no case law to support the assertion that a judge may be subjected to imputed liability that would defeat absolute judicial immunity.  This Court has also failed to find any such instance of absolute judicial immunity being overcome in this manner.

Plaintiff's additional claim, that both Judge Reed and Judge Montgomery performed non-judicial acts, and thus opened themselves up to liability, lacks merit. This Court fails to find any instance of non-judicial acts performed by either Judge Reed

or Judge Montgomery in the state court proceedings cited by Plaintiff.  (Doc. # 167 at 11.)

### D.    Prosecutorial Immunity

Magistrate Judge Watanabe recommended that all individual-capacity claims against Defendants Anderson, Lorenz, Peters, and Johnson be dismissed on the basis of prosecutorial immunity.  (Doc. # 156 at 17.)  In addition, Magistrate Judge Watanabe recommended the dismissal of any individual-capacity claims brought against Defendant Garnett that are derivative of the claims brought against Defendants Anderson, Lorenz, Peters, and Johnson.  (*Id.*)

"Absolute prosecutorial immunity is a complete bar to a suit for damages under 42 U.S.C. § 1983."  *Mink v. Suthers*, 482 F.3d 1244, 1258 (10th Cir. 2007), *cert. denied*, 552 U.S. 1165 (2008) (citing *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1976)).  Prosecutors are entitled to absolute immunity stemming from activities "intimately associated with the judicial phase of the criminal process."  *Imbler*, 424 U.S. at 430.  Courts use a "functional approach" to determine which actions the prosecutor took "in initiating a prosecution and in presenting the State's case" to determine if absolute immunity applies.  *Id*. at 431.  This functional approach "looks to 'the nature of the function performed, not the identity of the actor who performed it.'"  *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)).  The Supreme Court has been "quite sparing" in recognizing absolute immunity because it is presumed that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties.  *Burns v. Reed*, 500 U.S. 478, 487 (1991).  Thus, "[a]bsolute immunity does not extend to 'those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative

officer rather than that of advocate.'"   *Mink*, 482 F.3d at 1259 (quoting *Imbler*, 424 U.S. at 430–31).   However, absolute immunity may apply in instances of administrative or investigative activity "when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court."   *Snell v. Tunnell*, 920 F.2d 673, 693 (10th Cir. 1990).

Plaintiff objects to the application of absolute immunity to Defendants Anderson, Peters, and Johnson.  (Doc. # 167 at 12-14.)  Specifically, Plaintiff objects to absolute immunity for Defendant Anderson due to Anderson's role in the alleged conspiracy and the non-immune acts of her co-conspirators.  (*Id*. at 12.)  Plaintiff argues that Defendant Peters is not entitled to absolute immunity because of the pre-arrest actions taken by Peters and the alleged indifference toward the "many oversights" in the affidavit prepared by Peters.  (*Id*. at 12-13.)  Additionally, Plaintiff objects to Defendant Johnson's absolute immunity because of Johnson's actions that allegedly were taken to cover-up the conspiracy surrounding Plaintiff's 2010 case.  (*Id*. at 13-14.)

As noted above, absolute immunity may apply in instances of administrative or investigative activity "when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court."   *Snell*, 920 F.2d at 693.  While the Court acknowledges that all of the actions of Defendants Anderson, Peters, and Johnson were not strictly undertaken in their roles as advocates, the functional approach to assessing actions in the context of prosecutorial immunity supports a finding of absolute immunity in this case.  The actions that Plaintiff identifies were intimately related to initiating and prosecuting a criminal action.  Thus, Defendants Anderson, Peters, and Johnson are entitled to absolute immunity.  *Imbler*, 424 U.S. 409.

### E.     Statute of Limitations

Magistrate Judge Watanabe recommended the dismissal of Plaintiff's claims, insofar as they are predicated on the 2010 prosecution of Plaintiff and the guilty plea he entered, based on the running of the statute of limitations for § 1983 and § 1985 claims. (Doc. # 156 at 20-22.)

"When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985). The statute of limitations for claims under § 1983 "is drawn from the personal-injury statute of the state in which the federal district court sits." *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008). "For conspiracy claims under § 1985(3), courts have also applied the forum state's personal-injury statute of limitations." *Lyons v. Kyner*, 367 F. App'x 878, 882 (10th Cir. 2010).

Magistrate Judge Watanabe noted that Plaintiff does not deny that a two-year statute of limitation applies to the majority of his claims. (Doc. # 156 at 21.) However, Plaintiff objects to Magistrate Judge Watanabe's application of the "last overt act" rule. (Doc. # 167 at 15-16.) Plaintiff argues that the statute of limitations has not run because Defendants failed to investigate Plaintiff's complaints of police fraud and prosecutorial misconduct and have allowed a conspiracy to continue to cause injury to Plaintiff. (*Id.*)

The statute of limitations for this type of action "'runs from the last overt act resulting in damage to the plaintiff.'" *Lyons v. Kyner*, 357 Fed. Appx. 878, 882 (10th Cir. 2010) (quoting *Bell v. Fowler*, 99 F.3d 262, 270 (8th Cir. 1996)). In the instant case, Plaintiff has failed to present any evidence that he was injured as a result of the alleged co-conspirators' inaction, or "failure to investigate," following his 2010 proceedings.

12

Thus, the statute of limitations began to run at the conclusion of the 2010 proceeding, and Plaintiff's claims are barred insofar as they stem from that prosecution.

### F.   Equal Protection

Magistrate Judge Watanabe recommended the dismissal of Plaintiff's equal protection claims for failure to allege a plausible claim of equal protection violations. (Doc. # 156 at 24.)   To state a claim for alleged unlawful gender discrimination, a showing of both discriminatory intent and discriminatory effect is required.   *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003).   Plaintiff objects to Magistrate Judge Watanabe's recommendation on the equal protection claims and asserts that there is sufficient evidence to show a discriminatory intent and effect.   (Doc. # 167 at 16-21.)   In particular, Plaintiff alleges that Defendants regularly "refuse to investigate sex and violence perpetrations [by] women" and, with respect to his case, "introduce[d] sex and violence elements as a means to advance a criminal indictment against a man."   (*Id.* at 21.)

As noted above, to survive a motion to dismiss under Rule 12(b)(6), Plaintiff must meet the plausibility standard set forth in *Iqbal*.   This standard "asks for more than a sheer possibility" that the alleged claim might have occurred.   *Iqbal,* 556 U.S. at 678 (citation and quotation marks omitted).   In the instant case, Plaintiff fails to allege any plausible facts to show discriminatory intent or effect and, instead, merely assets conclusory allegations.

### G.   Due Process

Magistrate Judge Watanabe recommended the dismissal of Plaintiff's due process claims under Rule 12(b)(6).   (Doc. # 156 at 24-25.)   Plaintiff objects to this

recommendation and asserts that Magistrate Judge Watanabe mistook his claims for procedural due process as claims for substantive due process.  (Doc. #167 at 21-22.)

To survive a Rule 12(b)(6) motion to dismiss a procedural due process claim, a plaintiff must show "(1) a constitutionally protected liberty or property interest, and (2) a governmental failure to provide an appropriate level of process." *Citizen Center v. Gessler*, 770 F.3d 900, 916 (10th Cir. 2014).  In the instant case, Plaintiff has failed to plausibly allege that he has met the second prong of the procedural due process test. Throughout his Second Amended Complaint, Plaintiff asserts that Defendants infringed his due process rights, but consistently refers to hearings held both in court and before judges.  (Doc. # 83 at 171-79.)  Plaintiff has not alleged plausible facts sufficient to show that he was denied adequate process at any point during his 2010 or 2014 proceedings.

### H.   *Monell* Liability

Magistrate Judge Watanabe recommended the dismissal of Plaintiff's claims against public entities and supervisors that Plaintiff asserted based on a pattern-or-practice theory, a failure-to-train theory, and a supervisor-liability theory.  (Doc. # 156 at 25-26.)  Plaintiff objects to Magistrate Judge Watanabe's recommendation and asserts that he has, at a minimum, stated a claim for *Monell* liability.  (Doc. # 167 at 22.)

As noted by Magistrate Judge Watanabe, the Tenth Circuit summarized the standard for finding *Monell* liability as follows:

> A municipality may not be held liable under 42 U.S.C. § 1983 solely because its employees inflicted injury on the plaintiff. It may only be held liable under § 1983 for its own unconstitutional or illegal policies.  Thus, a municipality is liable only when the official policy [or unofficial custom] is the moving force behind the injury alleged.  A plaintiff must therefore identify a government's policy or custom that caused the injury.  The plaintiff must then show that the policy was enacted or maintained with deliberate indifference

to an almost inevitable constitutional injury. Indeed, where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.

We recently characterized these required showings as three specific elements: (1) official policy or custom, (2) causation, and (3) state of mind.

An official policy or custom may take the form of: (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Cacioppo v. Town of Vail, Colo.*, 528 F. App'x 929, 931-32 (10th Cir. 2013) (internal citations, quotation marks, and alternations omitted).

In the instant case, Plaintiff has failed to allege that (1) a government policy or custom existed, (2) the policy or custom caused him a constitutional injury, and (3) this policy or custom was a result of deliberate indifference to the constitutional injury. While Plaintiff highlights a number of instances in which he disagrees with how his 2010 and 2014 proceedings in Colorado were handled, this is not enough to establish the necessary requirements of *Monell* liability. Additionally, Plaintiff fails to establish that he suffered a constitutional injury as a result of that policy or custom, as discussed above. Finally, Plaintiff does not allege plausible facts sufficient to show that either the county or municipality had a state of mind equivalent to deliberate indifference to any type of constitutional injury.

## I.      State Action Doctrine

Magistrate Judge Watanabe further recommended that Plaintiff's remaining claims against Defendants Louth and LaFemina, as advanced by Plaintiff under the state action doctrine, be dismissed under Rule 12(b)(6).  (Doc. # 156 at 26-29.) Magistrate Judge Watanabe reasoned that Plaintiff presented no facts that would plausibly establish that either Louth or LaFemina acted in concert with the state or that they should be deemed a state actor.  (*Id*.)  Plaintiff objects to this assessment and argues that Magistrate Judge Watanabe ignored a number of facts that would plausibly establish that both Louth and LaFemina worked in such close concert with state actors that they essentially became state actors.  (Doc. # 167 at 23-25.)

In applying the state action doctrine, courts have applied a variety of tests depending on the facts of the case.  *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447-48 (10th Cir. 1995).  For example, a court may look at whether a third party is a willful participant in a joint activity with the State or state agents, *id*. at 1447, or a court may consider whether a private party has exercised "powers traditionally exclusively reserved to the State."  *Jackson*, 419 U.S. at 352.

### 1.      Defendant Louth

When a defense attorney conspires with the prosecution to deprive a criminal defendant of constitutional rights, the attorney is considered to be acting under the color of state law.  *Tower v. Glover*, 467 U.S. 914, 920 (1984).  When alleging state action via conspiracy, a plaintiff "must specifically present facts tending to show agreement and concerted action."  *Sooner Products Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983).

Plaintiff has failed to plausibly allege that Defendant Louth, as Plaintiff's defense attorney in the 2010 proceedings, acted in concert with any state actors to deprive

Plaintiff of his constitutional rights.  Instead, Plaintiff merely concludes that Defendant

Louth must have acted in concert because Plaintiff was advised to take certain actions

in his 2010 proceedings, which led to his guilty plea.  (Doc. # 167 at 23-24.)  While

Plaintiff may be unhappy with how his defense attorney advised him in his 2010

proceedings, a conspiracy with state actors cannot be inferred from Plaintiff's

conclusory statements alone.

### 2.    Defendant LaFemina

Under any of the various state-action tests, Plaintiff also fails to plausibly allege

that Defendant LaFemina was a state actor.  As with many of his other claims, Plaintiff

relies solely on conclusory statements of conspiracy and does not provide this Court

with any basis for sustaining his state-action claims against Defendant LaFemina.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, it is hereby:

ORDERED that Plaintiff's Objection (Doc. # 167) is OVERRULED;

FURTHER ORDERED that the Report & Recommendation of United States

Magistrate Judge Watanabe (Doc. # 156) is AFFIRMED and ADOPTED;

FURTHER ORDERED that the Motion to Dismiss Second Amended Complaint

Pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6) by Defendants Lael Montgomery and

Thomas Reed (Doc. # 106) is GRANTED;

FURTHER ORDERED that the Boulder County Defendants' Motion to Dismiss

Plaintiff's Second Amended Complaint and First Supplemental Complaint (Doc. # 107)

is GRANTED;

FURTHER ORDERED that the Defendants City of Boulder, Boulder Police

Department, Greg Testa, Traci Cravitz, Kerry Yamaguchi, G. Mulvaney, Lucy Batton,

Gordon Brown, Cassandra Henrikson, and Erica Solano's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. # 108) is GRANTED;

FURTHER ORDERED that Defendant Steve Louth's Renewed Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. # 110) is GRANTED; and

FURTHER ORDERED that Defendant Liz LaFemina's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. # 140) is GRANTED.

The Court concludes that, even if Plaintiff were allowed another opportunity to amend his complaint, such opportunity would be futile.  Plaintiff has already amended his complaint twice, and Plaintiff's Second Amended Complaint totals 215 pages.  There is no reason to believe that Plaintiff could allege additional facts such that a third amended pleading would withstand another round of motions to dismiss.

Therefore, it is FURTHER ORDERED that Plaintiff's Second Amended Complaint and Supplement (Doc. ## 83 & 84) is DISMISSED WITH PREJUDICE, that this case is DISMISSED in its entirety, and that the Clerk of the Court shall close this case.

It is FURTHER ORDERED that Defendants shall have their costs by filing a Bill of Costs with the Clerk of the Court no later than 14 days after the entry of judgment, and all parties shall bear their own attorney fees.

DATED: December 10, 2015          BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge